IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DYLAN ISAAC BURSELL,

        Plaintiff,

v.

COLLETTE PETERS, MICHAEL GOWER, "JANE" AMSBERRY, "JOHN" PEDRO, "JOHN" VAAFUSUAGA, and JOHN DOES 1 THROUGH 4,

        Defendants.

No. 2:18-cv-01978-HZ

OPINION & ORDER

Alexander Meggitt
P.O. Box 5248
Portland, OR 87208

    Attorney for Plaintiff

Michael R. Washington
OREGON DEPARTMENT OF JUSTICE
Trial Division
1162 Court Street NE
Salem, OR 97301

    Attorney for Defendants

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Dylan Isaac Bursell brings this civil rights action under 42 U.S.C. § 1983 against Defendants Collette Peters, Michael Gower, "Jane" Amsberry, "John" Pedro, "Jane" Vaafusuaga, and John Does 1 through 4. Plaintiff alleges Defendants violated his Eighth Amendment rights by failing to properly decontaminate him after secondary exposure to pepper spray while in ODOC custody. Defendants now move for summary judgment, arguing Plaintiff did not properly exhaust his administrative remedies before filing this action. For the reasons below, the Court grants Defendants' motion.

**BACKGROUND**

Plaintiff entered the custody of the Oregon Department of Corrections ("ODOC") on June 22, 2017, and has been housed at Eastern Oregon Correctional Institution ("EOCI") since August 3, 2017. Sobotta Decl. ¶ 3, ECF 23. At the time of the events at issue in this case, Defendant Vaafusuaga was a lieutenant at EOCI, and three of the John Doe Defendants were officers working in the Disciplinary Segregation Unit ("DSU") at EOCI. Compl. at 3, ECF 1. Defendant Amsberry was the Superintendent of EOCI, and Defendant Pedro and one of the John Doe Defendants were Assistant Superintendents of EOCI. *Id*. Defendant Gower is the Assistant Director of Operations of ODOC. Compl. at 3. Defendant Peters is the Director of ODOC. *Id.*

Plaintiff alleges that on the evening of March 13, 2018, an EOCI SERT team in riot gear and gas masks conducted a cell extraction in an adjacent cell. Compl. at 3–4. As part of the extraction, Defendant Vaafusuaga administered three-to-five "huge" four-to-six second bursts of oleoresin capsicum ("OC" or "pepper") spray. *Id.* Plaintiff alleges that he and other inmates yelled at officers to shut off the air vents, which began to blow toxic fumes into the neighboring cells. *Id.* According to Plaintiff, the spray was "very potent and caused [P]laintiff extreme

discomfort [and] horrible burning of the skin [and] throat." *Id.* Plaintiff choked, gaged, and gasped for breath. *Id.* Plaintiff alleges that the fumes also caused officers to cough, choke, and gag as they walked through the tier. Compl. at 5. Plaintiff asserts that he and other inmates banged on their doors and yelled at officers to shut the vents off. *Id.* He also alleges that they requested fresh air and showers. *Id.* Their complaints were ignored. *Id.* Nearly two days after the incident, a Hazmat team arrived to clean the chemical agents from the cell, and Plaintiff was given a shower. *Id.* at 5–6.

In a letter dated March 23, 2018, addressed to Defendant Peters, Plaintiff informed Defendant Peters about the March 13 incident. Meggitt Decl. Ex. 4, ECF 29. Plaintiff wrote that fumes poured into his cell, causing severe burning, itching, and pain in his eyes, lungs, throat, and skin. *Id.* He recalls requesting a shower and fresh air from staff. *Id.* Plaintiff asked Defendant Peters to address the incident and implement policies to train staff in proper decontamination practices for direct and indirect exposure to OC spray. *Id.* Plaintiff alleges—both in his letter to Defendant Peters and his declaration submitted to this Court—that he sent the letter in lieu of submitting a formal grievance because he feared retaliation from officers and other prison officials. *Id.*; Meggitt Decl. Ex. 3 ("Bursell Decl.") ¶ 5. In his letter, Plaintiff stated that he had "seen the retaliation many times." Meggitt Decl. Ex. 4.

On September 7, 2018, while Plaintiff was waiting for a response to his letter, Plaintiff submitted an unrelated medical grievance regarding a change in his pain medication. Sobotta Decl. ¶¶ 11, 12, Att. 4–5. Plaintiff's grievance was denied, and Plaintiff filed both a first and second appeal, exhausting his administrative remedies for this grievance. *Id.*

Plaintiff's letter to Defendant Peters was marked as received on September 14, 2018, nearly six months after Plaintiff allegedly sent the letter. Meggitt Dec. Ex. 4. On September 24,

2018, Defendant Gower responded to Plaintiff, acknowledging receipt of the letter on September 14, 2018, and informing Plaintiff that his letter would be forwarded to Defendant Amsberry, EOCI Superintendent. Meggitt Decl. Ex. 5. On October 8, 2018, Plaintiff sent a note to Defendant Amsberry asking for the status of her response to his letter. Meggitt Decl. Ex. 7. Officials informed Plaintiff that a final response would be completed within a week or so. *Id.*

On October 11, 2018, Defendant Amsberry responded to Plaintiff's letter. Meggitt Decl. Ex. 6. She told Plaintiff that Lieutenant Lindholm, who she had assigned to investigate Plaintiff's allegations, had found no evidence or documentation to substantiate Plaintiff's claim. *Id.* Plaintiff was subsequently moved between the general population and the DSU several times, and when he was released from the DSU in May of 2019, Plaintiff's legal papers related to the March 13, 2018 incident were missing from his personal property. Bursell Decl. ¶¶ 6–10.

Other inmates filed grievances regarding improper decontamination after secondary exposure on March 10 and 13, 2018, including Adrian Konecny and James Werby. Mr. Konecny asserts that officials were "very vague" in response to his grievance, never addressing what had occurred on March 13. Meggitt Decl. Ex. 8. Mr. Konecny's grievances were denied at each level of the grievance process. Meggitt Decl. Exs. 9, 10. Mr. Werby's grievances were similarly denied at each level of the process. Meggitt Decl. Exs. 11, 12.

On November 13, 2018, Plaintiff filed this action under 42 U.S.C. § 1983, alleging Defendants violated his Eighth Amendment rights when he was not given a reasonable opportunity to decontaminate after secondary exposure to chemical agents. Compl. at 7. He also brings supervisory liability claims against Defendants Peters, Gower, Amsberry, Pedro, Vaafusuaga, and Doe. Compl. at 9–12. Plaintiff seeks a declaratory judgment and injunctive relief ordering Defendants to amend the Oregon Administrative Rules to address

decontamination protocols for bystanders exposed to chemical agents. Compl. at 12–13. He also seeks $40,000 in compensatory damages and $80,000 in punitive damages. Compl. at 13.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment is improper

where divergent ultimate inferences may reasonably be drawn from the undisputed facts."
*Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (internal quotation marks omitted); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985) ("Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper.").

## DISCUSSION

Defendants move for summary judgment, arguing that Plaintiff's claims are barred under the Prison Litigation Reform Act ("PLRA") because he failed to exhaust his administrative remedies prior to filing suit.[1] Def. Mot. Summ. J ("Def. Mot.") 2–3, ECF 22. Plaintiff makes two arguments in opposition to Defendants' motion. First, Plaintiff argues that Defendants Amsberry and Gower waived their exhaustion defense when they responded to Plaintiff's March 23, 2018 letter. Pl. Resp. Def. Mot. ("Pl. Resp.") 6, ECF 28. Second, Plaintiff contends that the grievance procedure was unavailable to Plaintiff because EOCI officials were unwilling to provide relief to other inmates involved in the same incident. *Id.* at 8.

Exhaustion under the PLRA is mandatory. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, however, only as long as "administrative remedies . . . are available." *Ross v. Blake*,

---

[1] Separately, Defendants argue that this case should be dismissed as barred by the Eleventh Amendment because Defendants are sued in their official capacities. Def. Mot. 7. But Plaintiff alleges in his complaint that he is suing Defendants in their personal capacities. Compl. at 3.

136 S. Ct. 1850, 1862 (2016). "To be available, a remedy must be available as a practical matter; it must be capable of use; at hand." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc) (internal quotation marks omitted).

Exhaustion is an affirmative defense "that must be pled and proved by a defendant." *Id.* at 1168. The defendant has the burden to prove that "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. Once a defendant has made such a showing, the burden shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. Although the burden of proof remains with the defendant, the defendant is entitled to summary judgment if undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust. *Id.* at 1166, 1172.

Here, neither party contends that Plaintiff pursued the available ODOC grievance process in complaining about the March 13, 2018 incident.[2] *See also Gallegos v. Troncoso*, No. EDCV

---

[2] Under Oregon Administrative Rule (OAR) 291–109–0149(1)(a), if an inmate is unable to resolve an issue through informal communications, the inmate may seek resolution of the issue by submitting a written grievance using the department's inmate grievance form. Inmates may grieve, among other things, the misapplication of any administrative directive or operational procedure and any oversight or error affecting an inmate. OAR 291–109–0140(2)(a), (d). There is ordinarily a thirty-day time limit to file a grievance. OAR 291–109–0150, OAR 291–109–0175(4). The grievance must contain "a complete description of the incident, action, or application of the rule being grieved, including date and approximate time." OAR 291–109–0140(1)(b).

If the initial grievance does not resolve the issue, the inmate may appeal any grievance response to the functional unit manager. OAR 291–109–0170(1)(b). The inmate must complete a grievance appeal form and file it with the grievance coordinator within fourteen days from the date that the grievance coordinator mailed the grievance response to the inmate. *Id*. If still unsatisfied, the inmate may appeal the functional unit manager's decision by completing a grievance appeal form and filing it with the grievance coordinator within fourteen days of the date that the grievance coordinator sent the first grievance appeal response to the inmate. OAR

7 – OPINION & ORDER

12-00547-GW MAN, 2013 WL 6732870, at *5 (C.D. Cal. Dec. 19, 2013) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Complaints sent to public officials outside the prison grievance process do not demonstrate exhaustion of administrative remedies under the PLRA."). Thus, in resolving this motion the Court need only determine: (1) whether Defendants waived their affirmative defense in responding to Plaintiff's letter and (2) whether Plaintiff is excused from the obligation to exhaust administrative remedies because the grievance procedure was unavailable to him. As to both issues, the Court finds for Defendants. Accordingly, Plaintiff's claims are dismissed for failure to exhaust administrative remedies under the PLRA.

I.    **Waiver**

Plaintiff first argues that Defendants Amsberry and Gower waived their exhaustion defense in responding to his March 23 letter. Pl. Resp. 6. Plaintiff suggests that instead of responding to the merits of his complaint, Defendant Gowers and Amsberry "should have returned his letter and told him to resubmit his concerns on an approved inmate grievance form" or informed Plaintiff that his claim was untimely. *Id.* at 7.

Prison officials waive the exhaustion defense when they "opt not to enforce a procedural rule but instead decide an inmate's grievance on the merits." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (finding the exhaustion defense waived where the plaintiff-prisoner obtained a decision on the merits at all three levels of review despite having failed to name all staff members involved in his case as required by prison procedures). In other words, "a prisoner exhausts [their] administrative remedies . . . under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the

---

291–109–0170(2)(c). The Assistant Director's or designee's decision on an inmate's grievance appeal is final and is not subject to further review.  OAR 291–109–0170(2)(f).

merits of the grievance at each available step of the administrative process." *Id.* Under these circumstances, "the purposes of the PLRA exhaustion requirement have been fully served: prison officials have had a fair opportunity to correct any claimed deprivation and an administrative record supporting the prison's decision has been fully developed." *Id.* (citing *Porter v. Nussle*, 534 U.S. 516, 525 (2002)).

In this circuit, courts have been strict in their application of the waiver exception. For example, in *Bulkin v. Ochoa*, the Eastern District of California found that only two of three defendants had waived their exhaustion defense even though prison officials responded to the merits of the plaintiff's grievance. No. 1:13-CV-00388 DAD DLB PC, 2016 WL 1267265, at *2 (E.D. Cal. Apr. 1, 2016). The district court reasoned that the procedural waiver only applies where the merits of the claim are reviewed "'at *all available levels* of administrative review.'" *Id.* (quoting *Reyes*, 810 F.3d at 656) (emphasis added) ("This ability to waive a procedural default ripens only if 'prison officials ignore the procedural problem and render a decision on the merits of the grievance *at each available step* of the administrative process.'"). Because the "failure to train" claim against one defendant was not raised by the plaintiff until the third and final level of review under the applicable grievance process, officials were not able to decide on the merits at each step of the process and the claim against this defendant was not exhausted. *Id.*

By contrast, two other defendants had waived their procedural defenses to Plaintiff's grievance. Even though the plaintiff had failed to name these defendants in his grievance as required by the applicable administrative procedures, "[a]t all levels of [the] plaintiff's appeal, prison officials addressed [the reckless endangerment] claim[s] on the merits," and therefore "had been alerted to the problem, knew of the actors involved, . . . and had been given the opportunity to rectify the alleged wrong through internal means." *Id.* At least one other district

merits of the grievance at each available step of the administrative process." *Id.* Under these circumstances, "the purposes of the PLRA exhaustion requirement have been fully served: prison officials have had a fair opportunity to correct any claimed deprivation and an administrative record supporting the prison's decision has been fully developed." *Id.* (citing *Porter v. Nussle*, 534 U.S. 516, 525 (2002)).

In this circuit, courts have been strict in their application of the waiver exception. For example, in *Bulkin v. Ochoa*, the Eastern District of California found that only two of three defendants had waived their exhaustion defense even though prison officials responded to the merits of the plaintiff's grievance. No. 1:13-CV-00388 DAD DLB PC, 2016 WL 1267265, at *2 (E.D. Cal. Apr. 1, 2016). The district court reasoned that the procedural waiver only applies where the merits of the claim are reviewed "'at *all available levels* of administrative review.'" *Id.* (quoting *Reyes*, 810 F.3d at 656) (emphasis added) ("This ability to waive a procedural default ripens only if 'prison officials ignore the procedural problem and render a decision on the merits of the grievance *at each available step* of the administrative process.'"). Because the "failure to train" claim against one defendant was not raised by the plaintiff until the third and final level of review under the applicable grievance process, officials were not able to decide on the merits at each step of the process and the claim against this defendant was not exhausted. *Id.*

By contrast, two other defendants had waived their procedural defenses to Plaintiff's grievance. Even though the plaintiff had failed to name these defendants in his grievance as required by the applicable administrative procedures, "[a]t all levels of [the] plaintiff's appeal, prison officials addressed [the reckless endangerment] claim[s] on the merits," and therefore "had been alerted to the problem, knew of the actors involved, . . . and had been given the opportunity to rectify the alleged wrong through internal means." *Id.* At least one other district

has reached the same conclusion in interpreting this exception, holding that, under *Reyes*, the merits of a plaintiff's claim must be addressed at all levels of review for the exhaustion defense to be waived. *See Kelley v. Gedney*, No. 316CV00041MMDWGC, 2017 WL 2426859, at *8 (D. Nev. June 5, 2017), *report and recommendation adopted*, No. 316CV00041MMDWGC, 2017 WL 3477741 (D. Nev. Aug. 14, 2017), *aff'd*, 715 F. App'x 766 (9th Cir. 2018) ("[I]t remains that the Ninth Circuit requires a decision on the merits at *all available levels of review* in order to consider the administrative remedies exhausted.").

Plaintiff argues that Defendants in this case waived their exhaustion defense because they ignored the procedural defects in Plaintiff's grievance letter and instead addressed his claim on the merits. Pl. Resp. 6–7. But unlike the inmates in *Reyes* and *Bulkin*, who filed formal grievances, Plaintiff here submitted a letter to Defendant Peters—the Director of the Oregon Department of Corrections—outside of the administrative process. Plaintiff in this case also did not appeal Defendants' response to his letter.³ As a result, the purpose of the PLRA exhaustion requirement was not fully served: Officials did not have a fair opportunity to address Plaintiff's claim on the merits at *all* levels of review, and the administrative record was not fully developed. *See Reyes*, 810 F.3d at 657 (finding waiver where "the purposes of the PLRA exhaustion requirement have been fully served: prison officials have had a fair opportunity to correct any claimed deprivation and an administrative record supporting the prison's decision has been fully developed."). Further, to extend the holding of *Reyes* to the circumstances of this case would allow inmates to skirt the exhaustion requirement whenever a prison official responds to a

---

³ The Court also notes that Defendant Amsberry—who responded to the first appeals of Mr. Konecny and Mr. Werby—was the ultimate respondent to Plaintiff's letter. Meggitt Decl. Exs. 9 at 4, 11 at 5; *See* OAR 291-109-0170(1)(d) ("The functional unit manager shall respond to the inmate's grievance appeal within 30 calendar days from the date the appeal was received by the functional unit manager.").

complaint sent outside the grievance process. This would undermine the goals of the PLRA and render the exhaustion requirement toothless. *See Woodford v. Ngo*, 548 U.S. 81, 94 (2006) ("Requiring proper exhaustion . . . . gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors."). Thus, Plaintiff's argument that Defendants waived their exhaustion defense fails.

## II. Unavailable Remedies

Plaintiff also argues that he had no obligation to exhaust his remedies because the administrative grievance procedure was unavailable to him as "EOCI officials consistently declined to provide relief to identical complaints from the same incident, specifically referring to inmates other than the individual who raised the grievance[.]"[4] Pl. Resp. 8. The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Consistent with the text of the statute, the Supreme Court has held that exhaustion is mandatory unless the pertinent administrative remedies are "unavailable." *Ross v. Blake*, 136 S.Ct. 1850, 1856, 1859 (2016) ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"). "[A]side from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances'" *Id.* at 1855–56 (rejecting the Fourth Circuit's "freewheeling" special circumstances exception to the PLRA's exhaustion

---

[4] Plaintiff appeared to suggest in a footnote that he may be excused from the exhaustion requirement because he feared retaliation from prison officials. *Id.* at 9 n.3. Plaintiff, however, clarified at oral argument that Plaintiff's fear of retaliation was context for his decision to send the letter and not an argument for waiver of the exhaustion requirement.

requirement). The Supreme Court has expressly rejected judge-made exhaustion doctrines in the context of claims subject to the PLRA. *Id.* at 1856–57; *see also Woodford*, 548 U.S. at 85 ("Exhaustion is no longer left to the discretion of the district court[.]").

The Court has identified certain circumstances where administrative remedies may be unavailable, including but not limited to: (1) where an administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where an administrative process is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1858–60. Because the prison has an incentive to maintain the functioning of its own administrative remedial processes, the Court has indicated that such circumstances will not arise very often. *Id.* at 1859.

Here, Plaintiff argues that the process was unavailable because prison officials did not grant relief to other inmates who grieved their inadequate decontamination after secondary exposure to OC spray in March of 2018, citing the denials of Mr. Konecny's and Mr. Werby's grievances and subsequent appeals. Pl. Resp. 8. Plaintiff notes that prison officials denied these grievances, which referred to multiple complaints from the "unit as a whole," prior to Plaintiff's 30-day deadline to file a grievance. Pl. Resp. 8–9 (citing Meggitt Decl. Exs. 9–12). Thus, Plaintiff suggests that the official's denial of related grievances signaled to Plaintiff that the grievance process for this specific incident was a dead end. *See Ross*, 136 S.Ct. at 1859 (The grievance process may be unavailable where "administrative officials have apparent authority, but decline ever to exercise it.").

Plaintiff has not demonstrated that the administrative grievance process was unavailable to him. Indeed, the record shows that the grievance process was available to Plaintiff. Plaintiff filed (and appealed) a grievance pertaining to a different issue while he was awaiting a response to his letter from Defendant Peters. Sobotta Decl. Ex. 5. There is no evidence in the record that the grievance process was futile because prison officials never exercised their authority to grant relief. When Plaintiff sent his letter to Defendant Peters in lieu of filing a formal grievance, Mr. Werby's and Mr. Konecny's grievances had not yet been denied. Meggitt Decl. Exs. 9–12. Thus, contrary to Plaintiff's suggestion, the facts on the ground when Plaintiff sent his letter to Defendant Peters did not demonstrate that no potential for relief existed. *Cf. Ross*, 136 S.Ct. at 1859. ("The modifier 'available' requires the possibility of some relief. When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy.). Accordingly, the Court finds that Plaintiff has failed to exhaust his administrative remedies.

## CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment [22]. Plaintiff's claims are dismissed with prejudice for failure to exhaust his administrative remedies.

IT IS SO ORDERED.

Dated _____April 8, 2020_____.

MARCO A. HERNÁNDEZ
United States District Judge

13 – OPINION & ORDER